IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAVORCO OPERATIONS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| SHARKNINJA OPERATING LLC, | ) | |
| | ) | **DEMAND FOR JURY TRIAL** |
| Defendant. | ) | |
| | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement arising from Defendant's making, using, importing, offering to sell, and selling portable blender products, including at least the Ninja Blast™ Portable Blender and all reasonably similar products (collectively, the "Accused Products"), that practice MavorCo Operations LLC's patented inventions.

## THE PARTIES

1.      Plaintiff MavorCo Operations LLC ("MavorCo") is a Delaware limited liability company. MavorCo owns all right, title, and interest, including full legal and beneficial title and all rights to sue and recover for past and ongoing infringement, in U.S. Patent Nos. 11,006,784; 11,229,891; 10,828,612; and U.S. Design Patent No. D981,179 (collectively, the "Asserted Patents").

2.      Defendant SharkNinja Operating LLC ("SharkNinja") is a Delaware limited liability company with its principal place of business at 89 A Street, Needham, Massachusetts 02494. On information and belief, SharkNinja designs, manufactures, markets, distributes, and sells consumer appliances, including the Accused Products, throughout the United States, including in this District.

– 1 –

**JURISDICTION AND VENUE**

3.      This Court has subject matter jurisdiction over the claims in this action under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under Acts of Congress relating to patents, including 35 U.S.C. § 271 *et seq*.

4.      This Court has personal jurisdiction over Defendant. Defendant is a Delaware entity and thus resides in this State. Upon information and belief, Defendant has also purposefully availed itself of the rights and benefits of Delaware law by conducting business in Delaware, including by making, using, selling, offering for sale, and/or importing infringing products (such as the Accused Products) into Delaware. Defendant's acts of patent infringement have been and continue to be committed in Delaware and in this judicial District. For these reasons, Defendant is subject to this Court's specific and general personal jurisdiction.

5.      Venue is proper in the District of Delaware under 28 U.S.C. § 1400(b) and 28 U.S.C. § 1391. Defendant is a Delaware entity and therefore resides in this District for purposes of patent venue. Additionally, Defendant has committed acts of infringement in this District. Accordingly, venue is proper in this Court.

**TECHNOLOGY BACKGROUND**

6.      The technology protected by the Asserted Patents pioneered the portable blender category. The core technology was developed by technologist Ryan Pamplin, a seasoned product innovator with experience building and commercializing advanced consumer hardware. Pamplin had previously served in senior leadership at augmented-reality pioneer Meta Company, where he helped drive development and market adoption of a "holographic computer" platform.[1] In 2017,

---

[1] https://www.bloomberg.com/news/articles/2017-07-18/this-startup-wants-to-replace-your-office-with-3d-holograms; https://meta.reality.news/news/exclusive-metas-ryan-pamplin-meta-2-headset-future-mixed-reality-0173713/; *see also* https://www.youtube.com/watch?v=utaSAMtNIPw.

Mr. Pamplin suffered a health crisis that forced him to step back from his work to focus on his health. He turned his attention to increasing the availability of nutrition on the go, and set out to create a solution that solved for the limitations of a traditional countertop blender.

7.      Traditional blenders had remained fundamentally unchanged for nearly a century, and several engineering challenges made portable blenders impractical. The patented technology offered novel solutions to these challenges, delivering high torque from a battery power source, using optimized blade geometry in a small container for thorough blending and incorporating safety interlocks to prevent accidental blade activation during travel.

8.      In mid-2018, the world's first truly portable blender featuring a cordless, single-serve design that could perform like a countertop blender, but in a compact form.  This device, dubbed the "BlendJet One," embodied several of these advancements and showed that on-the-go blending could be effective.

9.      The early engineering triumphs of the BlendJet technology quickly translated into commercial success. The initial production run of 7,000 units for the June 2018 launch sold out immediately.[2] By the end of 2018, over 100,000 customers in 100+ countries had purchased BlendJet units, validating the pent-up demand for a portable blender solution.

10.      Mr. Pamplin continued to improve upon the device, and in 2020, released the BlendJet 2. The BlendJet 2 device improved upon the original BlendJet One product with several innovations offering a more powerful and versatile solution for on-the-go blending.

11.      Consumers enthusiastically embraced the BlendJet technology's convenience and performance, and by late 2020, more than one million BlendJet units had been sold. At its peak,

---

[2] https://getrecharge.com/blog/think-outside-the-box-with-blendjet-founder-ryan-pamplin

consumers bought a BlendJet device every three seconds worldwide,[3] and the devices were available at over 30,000 retail locations.

## PATENTS-IN-SUIT AND THE UNDERLYING INVENTIONS

12.    While building this new product category, Mr. Pamplin filed for numerous patents to protect the proprietary technologies underpinning BlendJet portable blenders. Four of those patents are asserted in this case, each reflecting a specific invention that arose from product development efforts and solved a critical challenge in making portable blenders feasible.

13.    U.S. Patent No. 11,006,784 ("'784 Patent") claims the foundational architecture of a cordless, rechargeable portable blender. It discloses a blender base housing a high-capacity battery and control circuitry that can power an electric motor without any external power source during blending. The '784 Patent's innovations enabled BlendJet products to integrate a powerful motor, battery, and electronics into a compact base, thereby untethering the blender from kitchen outlets and making truly portable blending possible for the first time. A true and correct copy of the '784 Patent is attached hereto as **Exhibit A**.

14.    U.S. Patent No. 11,229,891 ("'891 Patent") covers "TurboJet" offset blade technology, a blade assembly in which the blades are deliberately offset from center to create a high-velocity tornado effect inside the blending jar. By blasting ingredients at an angle, the offset blade structure dramatically improves blending efficiency, allowing a portable blender to pulverize ice, frozen fruit, and other tough ingredients with performance comparable to full-size blenders. A true and correct copy of the '891 Patent is attached hereto as **Exhibit B**.

15.    U.S. Patent No. 10,828,612 ("'612 Patent") is directed to a safety-focused locking mechanism for a portable blender. It provides a means to lock and unlock the blender's power interface, preventing the blades from activating during transport or when the jar is removed. This

---

[3] https://www.afterpay.com/en-US/for-retailers/access/success-stories/Ryan-Pamplin-BlendJet

patented feature (often called "Lock Mode") requires a deliberate user action (such as a button double-press) to unlock the blender for use, thereby protecting consumers from accidental blade spinning in purses, luggage, or other mobile settings. A true and correct copy of the '612 Patent is attached hereto as **Exhibit C**.

16.     U.S. Design Patent No. D981,179 ("'179 Design Patent") claims the ornamental design of a portable blender base assembly, as described in the patent's figures. A true and correct copy of the '179 Design Patent is attached hereto as **Exhibit D**.

17.     In early 2025, Plaintiff MavorCo acquired the BlendJet patent portfolio, entering the personal blender market under the BlendJet brand and investing in engineering and development resources to continue developing portable blender technology.

## SHARKNINJA RELIES ON BLENDJET TECHNOLOGY TO COMPETE

18.     Defendant SharkNinja is a sophisticated consumer products company that invests heavily in research and development and maintains a sizable portfolio of domestic and international patents. SharkNinja is no stranger to the U.S. patent system, nor to the commercial and strategic value of protecting its innovations through patent rights. It routinely seeks and obtains patent protection for features of its products, including kitchen appliances, vacuum systems, and other home electronics.

19.     SharkNinja has admitted in suits against other parties that it "devotes significant resources to research and development, including a team of more than 800 design engineers who

focus on developing new products and features to improve and revolutionize household appliances," and "has been awarded more than 4,500 patents on its home appliance innovations."[4,5]

20.     But SharkNinja elected not to pursue its own utility patent protection in the field of portable blenders.  SharkNinja has not prosecuted any utility patent applications directed to battery-powered, portable blending technology.

21.     Rather than invest time, resources, and technical expertise to develop its technology, SharkNinja simply entered the market with a copycat device.

22.     On March 23, 2023, SharkNinja issued a press release announcing its first cordless blender—the Ninja Blast Portable Blender—and declaring its intent to "disrupt the [portable blender] market."[6] The announcement marked the first time SharkNinja had entered this product category, nearly four years after the BlendJet technology was introduced and patented.

23.     SharkNinja launched the device for pre-order in March 2023 at $59.99 and SharkNinja quickly made it available at major retailers, including Amazon, Target, and Walmart.

24.     SharkNinja positioned the Ninja Blast at the same price point as the BlendJet to serve as a direct competitor, and SharkNinja's promotional strategy was explicitly comparative.

25.     One side of the Ninja Blast device packaging featured an image of the BlendJet device, boasting "SEE THE BLENDED DIFFERENCE" contending that the "BlendJet2" offered

---

[4] *SharkNinja Operating LLC et al v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified on Schedule A,* No. 25-25323 (S.D. Fla.), Docket No. 1 (Nov. 14, 2025) at 6.

[5] "We Do Product Development Differently | SharkNinja," https://youtu.be/S30UtRXNP04?t=19 at 0:19 ("The workflow is the same, but the outputs are different. And we're talking a lot of outputs. Dozens of best-selling, barrier smashing, market disrupting products like vacuums, robots, blenders, heat tools, and coolers across more than 30 different categories. So, how do we do it? That's where you come in. Product development at SharkNinja is a little bit different than what you're used to. Instead of sticking to rigid preset road maps, we evolve constantly so that we can move quickly, making it possible for us to do what we do really well.")

[6] https://ir.sharkninja.com/news/news-details/2023/New-Ninja-Blast-Portable-Blender-Challenges-the-Competition-with-Powerful-Innovative-On-The-Go-Blending/default.aspx

"Uneven ingredient breakdown" compared to the Ninja Blast as "[t]ested on 5 oz. whole milk, 2 oz. fresh banana, 1 oz. protein powder, 3 oz. frozen strawberries, per recipe instructions."



26.     SharkNinja's comparative advertising necessarily required physical possession and technical examination of BlendJet products. Thus, prior to and during the launch of the Ninja Blast Portable Blender in 2023, SharkNinja acquired one or more BlendJet portable blender products and conducted testing of BlendJet devices in connection with the development, benchmarking, and testing of the Ninja Blast.

27.     Such inspection, benchmarking, teardown, and technical evaluation of BlendJet devices also exposed SharkNinja to the patent marking indicated on the BlendJet devices.

28.     Despite studying and comparing its own devices against BlendJet products that were marked with the Asserted Patents, SharkNinja did not implement a non-infringing alternative to the patented cordless base architecture, offset blade system, or dual-mode locking mechanism. Instead, SharkNinja introduced and sold the Ninja Blast incorporating the same claimed features.

29.    The Ninja Blast product was marketed as an on-the-go blending solution, with a compact form factor, rechargeable battery, blending jar, and safety features, all features long covered by MavorCo's utility and design patent portfolio. SharkNinja even promoted one of its main features under the label "BlastBlade technology," utilizing MavorCo's patented TurboJet blade system under a near-match moniker.

30.    At the IFA 2023 trade show and through social media campaigns, SharkNinja touted the Ninja Blast's gym, travel, and office use-cases to further highlight the portable versatility that the BlendJet system had pioneered.[7]

31.    Within months, SharkNinja's Ninja Blast device gained traction in the marketplace. The Ninja Blast was designated an "Amazon's Choice" product and achieved rapid market penetration, regularly selling many thousands of units per month.[8]

32.    By the end of 2023, SharkNinja began publicly crediting the Ninja Blast portable blender line for a double-digit percentage increase in Food Preparation category sales. In its reports to the SEC regarding Q4 2023 performance, SharkNinja attributed the 14.3% sales growth in that segment to "strong sales of our . . . compact blenders, led by the launch of our new portable blenders."[9]

33.    In its 2024 Annual Report, SharkNinja again reported that "net sales increased by $1,274.9 million, or 30.0%, for the year ended December 31, 2024, compared to the year ended December 31, 2023" due to "growth across all four product categories, led by Food Preparation

---

[7] https://www.techradar.com/news/live/ifa-2023-live

[8] Across primary retail listings and SharkNinja's own U.S. storefront pages, the Ninja Blast lineup appears organized by model families: BC100/BC1XX (portable "Blast" colorways and finishes, including 16oz/18oz offerings) and BC151/BC152 (18oz "Blast" colorways and finishes).

[9] https://www.sec.gov/Archives/edgar/data/1957132/000195713224000003/exhibit991pressrelease ofsh.htm

Appliances which grew over 80%."[10] "Food Preparation Appliances net sales increased by $525.1 million, or 80.3%, to $1,178.7 million in the year ended December 31, 2024, compared to $653.6 million for the year ended December 31, 2023 driven by strong sales of [SharkNinja] ice cream makers and compact blenders, specifically [SharkNinja] portable blenders."[11]

34.     The Ninja Blast device achieves its core functionality—powerful blending, safety controls, portability, and user interface operation—by deploying technologies claimed in MavorCo's patents, including offset blade configurations, cordless rechargeable bases, safety interlocks for locking and unlocking the blending operation, and distinctive ornamental features.

35.     The '784 Patent discloses, inter alia, a portable rechargeable blender comprising a base that houses a battery and motor, operates without an external power source, and includes a detector that prevents operation unless the blending vessel is properly engaged. *See, e.g.*, '784 Patent, claims 1, 11.

36.     The Ninja Blast incorporates each of these features. It includes a cordless base with an integrated rechargeable 7.4V lithium-ion battery powering an internal motor and the base contains control circuitry that powers the blender entirely from its internal battery. The Ninja Blast also includes a container engagement detection mechanism preventing the unit from blending unless the jar is properly seated on the base, matching the claimed "detector configured to determine whether the container is properly attached." '784 Patent, claim 11.

37.     The '891 Patent discloses, inter alia, a blade system in which the blade assembly is offset from the center of the blending jar, facilitating turbulent flow and improved ingredient circulation. *See, e.g.*, '891 Patent, claims 1, 9.

---

[10] https://s202.q4cdn.com/977000893/files/doc_financials/2024/ar/2024-Annual-Report.pdf at 71.

[11] *Id.*

38.    The Ninja Blast employs an offset or asymmetric six-blade assembly in conjunction with a ribbed interior blending vessel designed to generate a vortex, which is precisely the type of flow-enhancing configuration described in the '891 Patent. This corresponds to the claimed "a blade offset from a center of the base," and "the offset configured to cause turbulent flow within the container." '891 Patent, claim 9.

39.    The '612 Patent discloses, inter alia, a control system that includes a user-engaged locked state, wherein the blender's activation mechanism is disabled until a deliberate unlock command is received. *See, e.g.*, '612 Patent, claims 1, 8, 15.

40.    The Ninja Blast incorporates each of these features. The unit remains unresponsive to activation unless the user intentionally presses and holds a dedicated power button, effectively placing the device into an "unlocked" state. Only then may a separate blending button be engaged. This two-step operation prevents inadvertent blending during storage or transit and corresponds to the "locked state in which the blender motor is prevented from being activated" as recited in claim 1 of the '612 Patent.

41.    The '179 Design Patent claims the ornamental design of a portable blender base assembly, as shown and described in the patent's figures, *e.g.*:



FIG. 2



– 10 –

42.    The '179 Design Patent protects the non-functional ornamental aspects of this base assembly design that contribute to the BlendJet product's distinctive overall visual impression.

## NOTICE AND MARKING

43.    BlendJet and MavorCo have complied with 35 U.S.C. § 287 with respect to the Asserted Patents. Specifically, to the extent that either BlendJet or MavorCo offered for sale, sold, or imported into the United States products covered by the Asserted Patents, they marked substantially all of those products with the Internet address BlendJet.com/patents[12] and posted at that address, for each BlendJet product, an identification of any patents practiced by that product, including any of the Asserted Patents.

44.    In addition, SharkNinja has had knowledge of the '784, '612, and '891 Patents and their relevance to the Accused Products since at least November 2, 2023, when its patent prosecution counsel submitted an Information Disclosure Statement to the U.S. Patent and Trademark Office identifying these patents during the prosecution of its U.S. Patent Application No. 29/872,554, which eventually issued as U.S. Design Patent No. D1,096,282 ("'282 Design Patent"). The '282 Design Patent is titled "Cordless Blender and Parts Thereof" and relates to an ornamental design for a cordless blender. On its website at sharkninja.com, SharkNinja identifies the '282 Design Patent as a patent that is practiced by the Accused Products.[13]

## COUNT I
### (Infringement of the '784 Patent – 35 U.S.C. § 271(a), (b), (c))

45.    MavorCo realleges and incorporates by reference paragraphs 1–44 as if fully set forth herein.

---

[12] *See, e.g.*, https://web.archive.org/web/20230326175205/https://blendjet.com/patents (Mar. 26, 2023); https://web.archive.org/web/20251005164208/BlendJet.com/patents (Oct. 5, 2025).

[13] *See* https://www.sharkninja.com/patents.html

46.     Defendant has directly infringed and continues to directly infringe at least one claim of the '784 Patent, including at least claim 1, under 35 U.S.C. § 271(a) by making, using, importing, offering to sell, and/or selling within the United States the Accused Products.

47.     As an example, the Ninja Blast is "A blender configured to blend foodstuffs":



(https://www.homedepot.com/p/NINJA-Blast-18-Oz-Single-Speed-Denim-Blue-Portable-Blender-BC151NV/325730835).

48.     The Ninja Blast includes "a base assembly, a container assembly, a set of two or more pointed blades, and control circuitry, wherein the set of two or more pointed blades is configured to rotate and blend the foodstuffs." As shown below, the Ninja Blast includes a base assembly that includes a rechargeable motor base, and a container assembly that includes a blending vessel. The Ninja Blast also includes a set of two or more pointed blades as part of the

BlastBlade assembly that are configured to rotate and blend food material. The Ninja Blast also includes control circuitry within the rechargeable motor base for a two-button control scheme and LED state indicators.



(https://device.report/manual/12278092).



(https://www.nfm.com/ninja-blast-1-speed-portable-hand-blender-in-cranberry-67228791/67228791.html).



(https://www.rtings.com/blender/reviews/ninja/blast).

49.    As shown above, the base assembly in the Ninja Blast also includes "an electrical motor configured to drive the rotation of the set of two or more pointed blades, wherein the set of two or more pointed blades includes at least two pointed blades that are pointed upwards, wherein the electrical motor is integrated into the base assembly."

50.    The base assembly in the Ninja Blast includes "a rechargeable battery configured to power the electrical motor such that, during blending by the blender, no power is supplied to the electrical motor from an external power source, wherein the rechargeable battery is integrated

into the base assembly such that the rechargeable battery is not accessible to the user during charging, blending, cleaning of the blender, and storage of the blender":



(https://www.youtube.com/watch?v=3evXCSofBx8).



**Rechargeable power base**

7.4V rechargeable base delivers power and speed without the cord. USB-C compatible.

(https://www.nfm.com/ninja-blast-1-speed-portable-hand-blender-in-cranberry-67228791/67228791.html).

51.     As shown above, the base assembly in the Ninja Blast also includes "a standardized charging interface configured to conduct electrical power to the rechargeable battery, wherein the standardized charging interface is a universal serial bus (USB) port configured to receive an electrical connector for charging the rechargeable battery."

52.     The base assembly in the Ninja Blast includes "a power button configured to be engaged manually, by a user pushing the power button, to turn the blender on and off":



(https://www.youtube.com/watch?v=3evXCSofBx8).

53.     The base assembly in the Ninja Blast includes "a first mechanical coupling configured to couple the base assembly to the container assembly":



(https://youtu.be/3evXCSofBx8?t=166).

54.    In the Ninja Blast, "the electric motor, the rechargeable battery, the standardized charging interface, the power button, and the first mechanical coupling are integrated such that the base assembly forms an integral whole":



(https://device.report/manual/12278092).

55.    The container assembly in the Ninja Blast "is configured to hold the foodstuffs within a container body during blending by the blender," and includes "a proximal end that is open and that is disposed, subsequent to the base assembly being coupled to the container assembly, near the set of two or more pointed blades" and "a distal end opposite the proximal end":



([https://device.report/manual/12278092](https://device.report/manual/12278092)) (annotated).

56.     The container assembly also includes "a second mechanical coupling disposed at or near the proximal end, wherein the second mechanical coupling is configured to engage the first mechanical coupling of the base assembly to couple the base assembly to the container assembly":



(https://youtu.be/3evXCSofBx8?t=114).





(https://youtu.be/MBcl557aCp0?t=68).

As shown below, the blending vessel container includes a mating coupling structure that engages the base coupling to form the assembled blender:



SIP LID
RELEASE BUTTON

ERGONOMIC
CARRY HANDLE

BLENDING VESSEL

BLASTBLADE™
ASSEMBLY

START/STOP BUTTON
RUNS 30-SECOND
BLEND MODE

POWER BUTTON

RECHARGEABLE
MOTOR BASE

USB-C
CHARGING CORD

CHARGING
PORT

back of motor base

([https://device.report/manual/12278092](https://device.report/manual/12278092)) (annotated).



(https://youtu.be/MBcl557aCp0?t=17).

57.    The control circuitry in the Ninja Blast "is configured to: control charging of the rechargeable battery through the standardized charging port; and subsequent to the base assembly being coupled to the container assembly, control the electrical motor to drive the rotation of the set of two or more pointed blades and thereby blend the foodstuffs." For example, the Ninja Blast blending mode is activated by the user touching the control button and engaging the control circuitry:

– 23 –



([https://www.youtube.com/watch?v=3evXCSofBx8](https://www.youtube.com/watch?v=3evXCSofBx8)). The control circuitry manages battery charging via USB-C and, once the container is properly attached, controls motor operation during blending.

58.    Defendant's infringement is literal or, alternatively, under the doctrine of equivalents.

59.    Since at least the filing date of this Complaint, Defendant, with knowledge of the '784 Patent, has induced infringement under 35 U.S.C. § 271(b) by encouraging and instructing end users to use the Accused Products in an infringing manner through user manuals, marketing, and online materials; and/or have contributorily infringed under § 271(c) by offering components (i.e., bases and blade assemblies) especially made for use in infringement and not suitable for substantial non-infringing use.

60.    MavorCo has been damaged by Defendant's infringement and is entitled to damages adequate to compensate for such infringement, no less than a reasonable royalty, together with pre- and post-judgment interest.

– 24 –

61. Defendant's infringement has been, and continues to be, willful. Defendant is a sophisticated participant in the consumer appliance market, had access to and studied the competing portable blender products embodying the patented design, and copied the inventions in the Accused Products. Defendant knew of the Patents-in-Suit and the risk of infringement, yet continued its infringing conduct, rendering this an exceptional case under 35 U.S.C. § 285 and warranting enhanced damages under 35 U.S.C. § 284.

## COUNT II
### (Infringement of the '612 Patent – 35 U.S.C. § 271(a), (b), (c))

62. MavorCo realleges and incorporates by reference paragraphs 1–61 as if fully set forth herein.

63. Defendant has directly infringed and continue to directly infringe at least one claim of the '612 Patent, including at least claim 1, under 35 U.S.C. § 271(a) by making, using, importing, offering to sell, and/or selling the Accused Products.

64. As an example, the Ninja Blast is "a rechargeable blender configured to blend foodstuffs":



(https://www.homedepot.com/p/NINJA-Blast-18-Oz-Single-Speed-Denim-Blue-Portable-Blender-BC151NV/325730835).



**Rechargeable power base**

7.4V rechargeable base delivers power and speed without the cord. USB-C compatible.

([https://www.nfm.com/ninja-blast-1-speed-portable-hand-blender-in-cranberry-67228791/67228791.html](https://www.nfm.com/ninja-blast-1-speed-portable-hand-blender-in-cranberry-67228791/67228791.html)).

65.    The Ninja Blast includes "a base assembly, a container assembly, a blending component, and control circuitry, wherein the blending component is configured to rotate around a rotational axis and blend the foodstuffs during blending by the blender." As shown below, the Ninja Blast includes a base assembly that includes a rechargeable motor base, and a container assembly that includes a blending vessel. The Ninja Blast also includes a set of blades as part of the BlastBlade assembly that are a blending component configured to rotate around a rotational axis and blend food material. The Ninja Blast also includes control circuitry within the rechargeable motor base for a two-button control scheme and LED state indicators.



(https://device.report/manual/12278092).

66.     As shown above, the base assembly in the Ninja Blast includes "an electrical motor configured to drive rotation of the blending component, wherein the electrical motor is integrated into the base assembly."

67.     The base assembly in the Ninja Blast includes "a rechargeable battery configured to power the electrical motor":



**Rechargeable power base**
7.4V rechargeable base delivers power and speed without the cord. USB-C compatible.

([https://www.nfm.com/ninja-blast-1-speed-portable-hand-blender-in-cranberry-67228791/67228791.html](https://www.nfm.com/ninja-blast-1-speed-portable-hand-blender-in-cranberry-67228791/67228791.html)).

68.     As shown above, the base assembly in the Ninja Blast also includes a "standardized charging interface configured to conduct electrical power to the rechargeable battery."

69.     The base assembly in the Ninja Blast includes "a power interface configured to be engaged manually by the user, wherein the power interface includes a power button":



(https://device.report/manual/12278092).

      70.    The power interface in the Ninja Blast "is configured to facilitate transitions between at least two modes of operation of the blender, wherein the at least two modes of operation include a locked mode of operation and an unlocked mode of operation, and wherein the power interface is further configured, during the unlocked mode of operation, to activate the rotation of

the blending component responsive to a particular manual engagement of the power interface by the user." For example, the Ninja Blast includes a power button to switch the blender between a locked and unlocked mode of operation. When in the unlocked mode of operation, the user can activate the rotation of the blending component by manually engaging the separate Start/Stop button:

**2** Turn unit **ON** by pressing the ⏻ button until Start/Stop button lights illuminate.

**3** Add ingredients, starting with liquids to the **MIN LIQUID** line then solid ingredients. If using ice, always add last. **DO NOT** fill ingredients past the **MAX FILL** line. Secure lid onto the vessel, twisting clockwise to tighten.

**4** Blend for a 30-second blend cycle by pressing the Start/Stop button.

. . .

**6** After blending, power **OFF** the unit by pressing the ⏻ button. Motor base should be turned **OFF** when drinking from the sip lid and when blender is no longer in use.

(https://sharkninja.my.salesforce.com/sfc/p/#Hs000008nIdi/a/Hs000001ZiAA/9Y.ZugFC2YAX CuACmp6nNhD7gjZlipErS8p9JYGgBnI).

71.    The container assembly in the Ninja Blast "is configured to hold the foodstuffs within a cylindrical container body during blending by the blender, wherein the container assembly includes: a proximal end that is open and that is disposed, subsequent to the base assembly being coupled to the container assembly, near the blending component; and a distal end opposite the proximal end":



([https://device.report/manual/12278092](https://device.report/manual/12278092)) (annotated).



(https://youtu.be/MBcl557aCp0?t=68).

72.     As shown below, the blending vessel container includes a mating coupling structure that engages the base coupling to form the assembled blender:



([https://device.report/manual/12278092](https://device.report/manual/12278092)) (annotated).



(https://youtu.be/MBcl557aCp0?t=17).

73.    The control circuitry in the Ninja Blast "is configured to: control the electrical motor during the rotation of the blending component":



(https://www.youtube.com/watch?v=3evXCSofBx8).

74.    The control circuitry in the Ninja Blast is also configured to "control operation of the power interface to enable a first transition from the locked mode of operation to the unlocked mode of operation, wherein the first transition occurs responsive to a first type of manual engagement of the power interface by the user, control the operation of the power interface to enable a second transition from the unlocked mode of operation to the locked mode of operation, wherein the second transition occurs responsive to a second type of manual engagement of the power interface by the user."  For example, to cause a first transition from the locked mode of operation to the unlocked mode, the user must perform a first type of manual engagement consisting of holding down the power button until the Start/Stop button lights are illuminated. To cause a second transition from the unlocked mode of operation to the locked mode, the user must perform a second type of manual engagement consisting of a short press of the power button:

**2** Turn unit **ON** by pressing the ⏻ button until Start/Stop button lights illuminate.

**3** Add ingredients, starting with liquids to the **MIN LIQUID** line then solid ingredients. If using ice, always add last. **DO NOT** fill ingredients past the **MAX FILL** line. Secure lid onto the vessel, twisting clockwise to tighten.

**4** Blend for a 30-second blend cycle by pressing the Start/Stop button.

. . .

**6** After blending, power **OFF** the unit by pressing the ⏻ button. Motor base should be turned **OFF** when drinking from the sip lid and when blender is no longer in use.

(https://sharkninja.my.salesforce.com/sfc/p/#Hs000008nIdi/a/Hs000001ZiAA/9Y.ZugFC2YAX CuACmp6nNhD7gjZlipErS8p9JYGgBnI).

75.    The control circuitry in the Ninja Blast is also configured to "selectively allow or prevent the rotation of the blending component based on whether the blender is currently operating in the locked mode of operation or the unlocked mode of operation, wherein the rotation of the blending component is prevented in the locked mode of operation such that the particular manual engagement of the power interface fails to activate the rotation of the blending component, and wherein the rotation of the blending component is allowed in the unlocked mode of operation and activated responsive to the particular manual engagement." For example, pressing the Start/Stop button will cause rotation of the blending component when the Ninja Blast is in the unlocked mode of operation, but will not when the Ninja Blast is in the locked mode:

**2** Turn unit **ON** by pressing the ⏻ button until Start/Stop button lights illuminate.

**3** Add ingredients, starting with liquids to the **MIN LIQUID** line then solid ingredients. If using ice, always add last. **DO NOT** fill ingredients past the **MAX FILL** line. Secure lid onto the vessel, twisting clockwise to tighten.

**4** Blend for a 30-second blend cycle by pressing the Start/Stop button.

. . .

**6** After blending, power **OFF** the unit by pressing the ⏻ button.
Motor base should be turned **OFF** when drinking from the sip lid
and when blender is no longer in use.

(https://sharkninja.my.salesforce.com/sfc/p/#Hs000008nIdi/a/Hs000001ZiAA/9Y.ZugFC2YAX
CuACmp6nNhD7gjZlipErS8p9JYGgBnI).

**3** Since there is no power cord, prevent accidental blade activation by ensuring the blender is turned **OFF** when not in use, while cleaning, or when drinking from the sip lid.

(*Id.*).

76.    Defendant's infringement is literal or, alternatively, under the doctrine of equivalents.

77.    Since at least the filing date of this Complaint, Defendant, with knowledge of the '612 Patent, has induced infringement under 35 U.S.C. § 271(b) by encouraging and instructing end users to use the Accused Products in an infringing manner through user manuals, marketing, and online materials; and/or have contributorily infringed under § 271(c) by offering components (i.e., bases and blade assemblies) especially made for use in infringement and not suitable for substantial non-infringing use.

78.    MavorCo has been damaged and is entitled to at least a reasonable royalty with interest.

79.    Defendant's infringement has been, and continues to be, willful. Defendant is a sophisticated participant in the consumer appliance market, had access to and studied the competing portable blender products embodying the patented design, and copied the inventions in the Accused Products. Defendant knew of the Patents-in-Suit and the risk of infringement, yet continued its infringing conduct, rendering this an exceptional case under 35 U.S.C. § 285 and warranting enhanced damages under 35 U.S.C. § 284.

## COUNT III
### (Infringement of the '891 Patent – 35 U.S.C. § 271(a), (b), (c))

80.     MavorCo realleges and incorporates by reference paragraphs 1–79 as if fully set forth herein.

81.     Defendant has directly infringed and continue to directly infringe at least one claim of the '891 Patent, including at least claim 1, under 35 U.S.C. § 271(a) by making, using, importing, offering to sell, and/or selling the Accused Products.

82.     As an example, the Ninja Blast is "a blender configured to blend foodstuffs":



(https://www.homedepot.com/p/NINJA-Blast-18-Oz-Single-Speed-Denim-Blue-Portable-Blender-BC151NV/325730835).

83.    The Ninja Blast includes "a base assembly, a container assembly, and control circuitry":



([https://device.report/manual/12278092](https://device.report/manual/12278092)).

84.    The base assembly in the Ninja Blast includes "(i) a set of blades supported by a shaft that is rotationally mounted, wherein the set of blades is configured to rotate around a

rotational axis and blend the foodstuffs, wherein the set of blades has a blade diameter during

blending by the blender; (ii) an electrical motor configured to drive rotation of the set of blades,

wherein the electrical motor is integrated into the base assembly, wherein the electrical motor is

arranged below the set of blades and in line with the rotational axis:



(https://www.nfm.com/ninja-blast-1-speed-portable-hand-blender-in-cranberry-

67228791/67228791.html).



(https://www.rtings.com/blender/reviews/ninja/blast).

85.    The base assembly in the Ninja Blast also includes "(iii) a first mechanical coupling

configured to couple the base assembly to the container assembly":

– 41 –



([https://device.report/manual/12278092](https://device.report/manual/12278092)) (annotated).



(https://youtu.be/MBcl557aCp0?t=17).

86.    The base assembly in the Ninja Blast includes "a base diameter around an outer periphery of the base assembly near the first mechanical coupling":



(https://www.rtings.com/blender/reviews/ninja/blast) (annotated).

87.    The container assembly in the Ninja Blast "is configured to hold the foodstuffs within a container body during blending by the blender, wherein the container assembly includes: (i) a proximal end that is open and that is disposed, subsequent to the base assembly being coupled to the container assembly, near the set of blades" and "(ii) a distal end opposite the proximal end":



([https://device.report/manual/12278092](https://device.report/manual/12278092)) (annotated).

88.    The container assembly in the Ninja Blast also includes "(iii) a second mechanical coupling disposed at or near the proximal end of the container assembly, wherein the second mechanical coupling is configured to engage the first mechanical coupling to couple the base assembly to the container assembly, wherein the container body extends from the second mechanical coupling to the distal end." As shown below, the blending vessel container includes a mating coupling structure that engages the base coupling to form the assembled blender:



([https://device.report/manual/12278092](https://device.report/manual/12278092)) (annotated).

89. The container body of the Ninja Blast "has a container diameter immediately above the second mechanical coupling, wherein a length of the container diameter matches a length of the base diameter":



(https://www.homedepot.com/p/NINJA-Blast-18-Oz-Single-Speed-Denim-Blue-Portable-Blender-BC151NV/325730835) (annotated).

90.    In the Ninja Blast, "subsequent to the base assembly being coupled to the container assembly by engagement between the first mechanical coupling and the second mechanical coupling, the blender has a shape such that, between the outer periphery of the base assembly and immediately above the second mechanical coupling, a diameter of the shape of the blender is substantially constant":

– 47 –



(https://www.homedepot.com/p/NINJA-Blast-18-Oz-Single-Speed-Denim-Blue-Portable-Blender-BC151NV/325730835) (annotated).

91.    The container body of the Ninja Blast "has a longitudinal axis between the proximal end and the distal end, wherein the longitudinal axis is parallel to the rotational axis":



(https://www.homedepot.com/p/NINJA-Blast-18-Oz-Single-Speed-Denim-Blue-Portable-Blender-BC151NV/325730835) (annotated).

92.    In the Ninja Blast, the rotational axis "is offset by an offset distance from the longitudinal axis, wherein the offset distance is between 5% and 40% of the blade diameter":



(https://www.rtings.com/blender/reviews/ninja/blast) (annotated).

93.     In the Ninja Blast, the control circuitry "is configured to control the electrical motor during the rotation of the set of blades." For example, the Ninja Blast includes control circuitry within the rechargeable motor base for a two-button control scheme to control the electrical motor that causes the rotation of the BlastBlade assembly:



([https://device.report/manual/12278092](https://device.report/manual/12278092)).

94.     Defendant's infringement is literal or, alternatively, under the doctrine of equivalents.

95.     MavorCo has been damaged and is entitled to at least a reasonable royalty with interest.

96.     Since at least the filing date of this Complaint, Defendant, with knowledge of the '891 Patent, has induced infringement under 35 U.S.C. § 271(b) by encouraging and instructing end users to use the Accused Products in an infringing manner through user manuals, marketing, and online materials; and/or have contributorily infringed under § 271(c) by offering components (i.e., bases and blade assemblies) especially made for use in infringement and not suitable for substantial non-infringing use.

97.     Defendant's infringement has been, and continues to be, willful. Defendant is a sophisticated participant in the consumer appliance market, had access to and studied the competing portable blender products embodying the patented design, and copied the inventions in the Accused Products.

98.     Defendant knew of the Patents-in-Suit and the risk of infringement, yet continued its infringing conduct, rendering this an exceptional case under 35 U.S.C. § 285 and warranting enhanced damages under 35 U.S.C. § 284.

## COUNT IV
### (Infringement of the '179 Design Patent – 35 U.S.C. §§ 271, 289)

99.     MavorCo realleges and incorporates by reference paragraphs 1–98 as if fully set forth herein.

100.    The '179 Design Patent claims the ornamental design of a portable blender base assembly as shown and described in the figures of the '179 Design Patent.

101.    Defendant SharkNinja has infringed and continues to infringe the '179 Design Patent under 35 U.S.C. § 271 by making, using, importing, offering for sale, and selling within the

United States the Accused Products, which embody the ornamental design claimed in the '179 Design Patent or a design substantially the same as the claimed design.



FIG. 2



102.    To an ordinary observer familiar with the prior art designs for portable blender base assemblies, the Accused Products' base assembly design is substantially the same as the design claimed in the '179 Design Patent, such that the resemblance would deceive the ordinary observer into believing the Accused Products and patented design are one in the same.

103.    Defendant's infringement of the '179 Design Patent has been willful. Defendant is a sophisticated participant in the consumer appliance market, had access to and studied the competing BlendJet portable blender products embodying the patented design, and nevertheless commercialized the Accused Products incorporating a substantially similar base assembly design.

104.    Defendant's infringement is literal or, alternatively, under the doctrine of equivalents.

105.    As a result of Defendant's acts of infringement, MavorCo has suffered and will continue to suffer damages.

106.    Pursuant to 35 U.S.C. § 289, MavorCo is entitled to recover Defendant's total profit from Defendant's acts of infringement of the '179 Design Patent, together with prejudgment and post-judgment interest.

107.    This is an exceptional case within the meaning of 35 U.S.C. § 285, and MavorCo is entitled to recover its attorneys' fees and costs.

## PRAYER FOR RELIEF

MavorCo respectfully requests that the Court enter judgment in its favor and against Defendant and grant:

A. Judgment that Defendant has infringed the Patents-in-Suit;

B. Permanent injunction barring Defendant and all others in active concert with Defendant from further infringement;

C. Award of all available and legally permissible damages adequate to compensate MavorCo for Defendant's infringement, including under 35 U.S.C. §§ 284 and 289, but in no event less than a reasonable royalty, together with pre- and post-judgment interest;

D. An ongoing royalty;

E. Award of Defendant's total profit from its infringement of the '179 Design Patent under 35 U.S.C. §289, together with pre- and post-judgment interest;

F. Finding of willful infringement and enhancement of damages under 35 U.S.C. § 284;

G. Declaration that this is an exceptional case and an award of MavorCo's attorneys' fees under 35 U.S.C. § 285;

H. Accounting and supplemental damages for any post-verdict infringement;

I. Plaintiff's costs and attorneys' fees; and

J.   Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

MavorCo demands a trial by jury on all issues so triable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Michael J. Flynn (#5333)
J. Layne Lancaster (#7616)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
mflynn@morrisnichols.com
llancaster@morrisnichols.com

*Attorneys for Plaintiff MavorCo Operations LLC*

OF COUNSEL:

Jennifer A. Kash
Francesca M. S. Germinario
Richard Lin
BUNSOW DE MORY LLP
701 El Camino Real
Redwood City, CA 94063
(650) 351-7248

March 3, 2026