# EXHIBIT A

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/016,528 | 08/26/2026 | 11229891 | 91485-00110 | 9412 |

159291 7590 10/09/2026

Esplin & Associates, PC
6225 Buckhorn Ridge Place
San Miguel, CA 93451

| EXAMINER | |
|---|---|
| DOERRLER, WILLIAM CHARLES | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3993 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/09/2026 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Brian Buroker
Gibson Dunn & Crutcher LLP
1700 M Street, NW
Washington, DC 20036

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/016,528* .

PATENT UNDER REEXAMINATION *11229891* .

ART UNIT *3993* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination | |
|---|---|---|---|
| | 90/016,528 | 11229891 | |
| | **Examiner** | **Art Unit** | **AIA (FITF) Status** |
| | WILLIAM C DOERRLER | 3993 | Yes |

***--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

The request for *ex parte* reexamination filed 08/26/2026 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892, b)☑ PTO/SB/08, c)☐ Other: ____

1. ☑ The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

/WILLIAM C DOERRLER/
Reexamination Specialist, Art Unit 399

cc:Requester ( if third party requester )

***DECISION ON REQUEST FOR REEXAMINATION***

A substantial new question of patentability affecting claims 1-18 and 20 of United States Patent Number 11,229,891 is raised by the request for *ex parte* reexamination.

***Notice of Pre-AIA or AIA Status***

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

***Service of Papers***

After the filing of a request for reexamination by a third-party requester, any document filed by either the patent owner or the third-party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 C.F.R. 1.248. See 37 C.F.R. 1.550(f). Service must be made by first class mail.

***Waiver of Right to File Patent Owner Statement***

In a reexamination proceeding, Patent Owner may waive the right under 37 C.F.R. 1.530 to file a Patent Owner Statement. The document needs to contain a statement that Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement and proof of service in the manner provided by 37 C.F.R. 1.248, if the request for reexamination was made

by a third party requester, see 37 C.F.R. 1.550(f). The Patent Owner may consider using the following statement in a document waiving the right to file a Patent Owner Statement:

**WAIVER OF RIGHT TO FILE PATENT OWNER STATEMENT**

Patent Owner waives the right under 37 C.F.R. 1.530 to file a Patent Owner Statement.

***Amendment in Reexamination Proceedings***

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 C.F.R. 1.530(d)-(j), must be formally presented pursuant to 37 C.F.R. 1.52(a) and (b), and must contain any fees required by 37 C.F.R. 1.20(c). See MPEP §2250(IV) for examples to assist in the preparation of proper proposed amendments in reexamination proceedings.

***Submissions***

In order to ensure full consideration of any amendments, affidavits or declarations or other documents as evidence of patentability, such documents must be submitted in response to the first Office action on the merits (which does not result in a close of prosecution). Submissions after the second Office action on the merits, which is intended to be a final action, will be governed by the requirements of 37 C.F.R. 1.116, after final rejection and by 37 C.F.R. 41.33 after appeal, which will be strictly enforced.

***Notification of Concurrent Proceedings***

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 11,229,891 throughout the course of this reexamination proceeding. The third party

requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and 37 CFR 41.33 after appeal, which will be strictly enforced.

### *Notification of Current Assignment of the Patent*

The patent owner is requested to provide the current assignment information for the patent for which reexamination is requested. An assignment can be made of record in the file of a patent application, patent, or other patent proceeding (e.g., reexamination proceeding). This step is necessary to permit the assignee to "take action" in the application, patent, or other patent proceeding under the conditions set forth in 37 CFR 3.73 and MPEP § 324. Recordation of an assignment in the assignment records of the Office, however, does not, by itself, permit the assignee to take action in the application, patent, or other patent proceeding.

### *Brief Summary of the Previous Examination*

The ‘891 patent issued with 20 claims on January 25, 2022. The patent issued from application 16/984,967, which was filed in the US on August 4, 2020. The ‘967 application was filed as a continuation of application 16/850,685 filed April 16, 2020 which was a continuation of 16/666,035 filed October 28, 2019.

The ‘967 application was filed with 20 claims. The first Office action rejected claims 1-20 under nonstatutory double patenting over claims 1-18 of US patent 10,702,837 (the patent that matured from the grandparent priority application) and claims 1-19 of patent 10,792,630 (the

parent application). The response was an amendment to clarify some of the claims and a terminal disclaimer. The submission of the terminal disclaimer led to Notice of Allowability. No reasons for allowance were given with the notice of allowability.

Similarly, the parent case, 16/850,685, had one non-final Office action that only rejected the claims over obvious-type double patenting based on 16/666,035. The ‘685 application was allowed without reasons for allowance once a terminal disclaimer was filed.

Grandparent application, 16/666,035 had claims 1-19 rejected for clarity and as anticipated by or in the alternative obvious over King (US 2015/0165402) with Lane (US 2012/0167781) as a possible teaching reference based on the clarity issue based on the diameter of the container, as the container was not clearly claimed. The application was allowed (without reasons for allowance) after an amendment adding the first and second mechanical couplings and the cylindrical container body having a container diameter immediately above the second mechanical coupling, with the diameters of the container assembly substantially constant between immediately above the second mechanical coupling and the distal end of the container assembly, with the length of the container matching a length of the base diameter.

***Substantial New Questions***

The Third Party Requester (TPR) requested reexamination of claims 1-18 and 20 of U.S. Patent No. 11,229,891 (hereinafter “the ‘891 patent”) based upon the following proposed rejections:

1. Claims 1-6,9-13 and 15 of the ‘891 patent are unpatentable under 35 USC 102 as anticipated by Chinese Patent Publication CN 208404249U (hereinafter “CN ‘249”).

2. Claims 1-6,9-13 and 15 of the ‘891 patent are unpatentable under 35 USC 103 as obvious over CN ‘249

3. Claims 7,8 and 16-18 of the ‘891 patent are unpatentable under 35 USC 103 as obvious over CN ‘249 in view of Chinese Patent Publication CN 204950502U (hereinafter “CN ‘502”).

4. Claim 14 of the ‘891 patent is unpatentable under 35 USC 103 as obvious over CN ‘249 in view of US Patent No. 4,487,509 to Boyce (hereinafter “Boyce”), US Patent No. 11,213,171 to Faulkner-Edwards et al. (hereinafter “Faulkner-Edwards”), and US Patent No. 10,415,868 to Grepper (hereinafter “Grepper”).

5. Claim 20 of the ‘891 patent is unpatentable under 35 USC 103 as obvious over CN ‘249 in view of CN ‘502 and further in view of Grepper.

6. Claims 1-7,9-13 and 15-18 of the ‘891 patent are unpatentable under 35 USC 103 as obvious over Chinese Patent Document CN 204889572U (hereinafter “CN ‘572”) in view of CN ‘249.

7. Claim 8 of the ‘891 patent is unpatentable under 35 USC 103 as obvious over CN ‘572 in view of CN ‘249 and further in view of CN ‘502.

8. Claim 14 of the ‘891 patent is unpatentable under 35 USC 103 as obvious over CN ‘572 in view of CN ‘249 and further in view of Boyce, Faulkner-Edwards, and Grepper.

9. Claim 20 of the ‘891 patent is unpatentable under 35 USC 103 as obvious over CN ‘572 in view of CN ‘249 and further in view of Grepper.

In regard to referring to the Chinese references, all page and paragraph citations will be referring to the English translations provided with the request throughout this proceeding.

A discussion of the availability of the prior art references now follows:

As stated above, the earliest claimed priority date for the ‘891 patent is the October 28, 2019 filing of the ‘035 grandparent application.

As such, the earliest effective filing date of the ‘891 patent is seen to be October 28, 2019. While the claims must be supported by the priority application, such an analysis will not be performed at this time as the proposed references predate October 28, 2019.

CN ‘249 is a Chinese patent that was published January 22, 2019, prior to the effective filing date of the ‘891 patent. The publication date of CN ‘249 makes it available under 35 USC 102(a)(1). CN ‘249 was not cited or relied on for rejections during the original prosecution of the ‘891 patent.

CN ‘502 is a Chinese patent that was published January 13, 2016. The publication date of CN ‘502 makes it available under 35 USC 102(a)(1). CN ‘502 was not cited or relied on for rejections during the original prosecution of the ‘891 patent.

Boyce is a US patent that was published December 11, 1984. The publication date of Boyce makes it available under 35 USC 102(a)(1). Boyce was not cited or relied on for rejections during the original prosecution of the ‘891 patent.

Faulkner-Edwards is a US patent published January 4, 2022, which is after the effective filing date of the ‘891 patent. However, the Faulkner-Edwards patent was a 371 application of a PCT which was filed March 14, 2017 (with a 371 date of September 14, 2018) prior to the effective filing date of the ‘891 patent. The earlier filing date of Faulkner-Edwards makes it available under 35 USC 102(a)(2). Faulkner-Edwards was not cited during the original prosecution of the ‘891 patent.

Grepper is a US patent published September 17, 2019, prior to the effective filing date of the ‘891 patent. The publication date of Grepper makes it available under 35 USC 102(a)(1). Grepper was not cited during the original prosecution of the ‘891 patent.

CN ‘572 is a Chinese patent published December 23, 2015, prior to the effective filing date of the ‘891 patent. The publication date of CN ‘572 makes it available under 35 USC 102(a)(1). CN ‘572 was not cited during the original prosecution of the ‘891 patent.

***Discussion of the SNQs***

SNQ 1 and 2: Claims 1-6,9-13 and 15 of the ‘891 patent are unpatentable over CN ‘249.

As stated above, the claims of the ‘891 patent were allowed without an explicit statement of the reasons for allowance. CN ‘249 is seen to teach the claim elements of the ‘891 patent to a degree that an examiner would consider the reference important to a patentability determination of the ‘891 patent. Specifically, CN ‘249 discloses a blender comprising a base assembly, a container assembly and control circuitry (paragraph 5 states that there is a main unit, a motor and a control board disposed within the main unit as well as a cup body mounted on the main unit). The main unit is a base assembly and the cup body is a container assembly. The base assembly includes a set of blades 22 that rotate around a rotational axis in use. Paragraph 35 states that “stirring blades 22 are connected to the motor shaft of the electric motor 21.” Paragraph 41 states, “the cup body 1 is threaded clockwise onto the main unit 2.” This is the first mechanical coupling between the base and the container assembly. The base assembly is round, so it inherently has a base diameter. CN ‘249 is a “food processor” designed to hold food in the cup body during use. The cup body (container assembly) has an open end with mating threads (second mechanical coupling means) to connect with the base assembly near the set of blades. The cup body shown in the figures (particularly figure 2) of CN ‘249 extends from the second mechanical coupling to a distal end with the diameter of the cup body matching the diameter of the base and the diameter remaining substantially constant from the bottom of the base to the top of the container assembly. Paragraph 37 states that the electric motor shaft is offset from the center of the cup body by a distance S, wherein S is between 1 and 10 mm. The blade diameter is not explicitly stated in the reference, but the figures show the offset being approximately 5% of the blade diameter. Control board 25 is mounted in the base as part of the motor unit.

As CN ‘249 is seen to teach the structure of claim 1 CN ‘249 would be considered by an examiner to be important to a patentability determination of the claim. As such, CN ‘249 is seen to provide a SNQ for claim 1 of the ‘891 patent.

In regard to claim 2, paragraph 35 states that the electric motor 21 is disposed within the main unit 2. Paragraph 42 describes the blade being threaded onto the motor shaft and the based sealed with screws to permanently integrate the motor into the base.

In regard to claim 3, figure 1 shows the power button on the base.

In regard to claim 4, figures 2 and 5 show an axis of rotation (the motor shaft) with blade 22 situated on the end of the shaft to rotate in a plane orthogonal to the shaft.

In regard to claim 5, the annotated figure 3 on page 32 of the request (shown below) shows the horizontal top surface of the blade mount. Figure 2 shows the blade mount on the end of the motor shaft.




In regard to claim 6, the above figure shows the blade offset towards the rear and centrally located laterally.

In regard to claim 9, the container body of CN ‘249 is shown to have a circular cross section.

In regard to claim 10, figure 1 shows the cylindrical shape.

In regard to claim 11, paragraph 41 states that the cup body is threaded onto the main unit.

In regard to claim 12, paragraph 35 states that the capacity of the cup is between 250 ml to 420 ml, which is approximately 8.5-14.2 ounces.

In regard to claim 13, although patent figures are not necessarily to scale, if the offset of the motor shaft to the center of the container is 2mm as shown in figure 3, the diameter of the base is 2.9 inches.

In regard to claim 15, paragraph 5 states, “an electric motor and a control board disposed within the main unit”.

As CN ‘249 teaches the features that led to the allowance of claims 1-6,9-13 and 15 of the ‘891 patent, CN ‘249 is seen to provide a SNQ for claims 1-6,9-13 and 15 of the ‘891 patent.

<u>SNQ 3</u>: Claims 7,8 and 16-18 of the ‘891 patent are unpatentable over CN ‘249 in view of CN ‘502.

As stated above, CN ‘249 is independently seen to support a SNQ for claims 1-6,9-13 and 15 of the ‘891 patent. CN ‘502 shows a similar portable, battery powered blender with a container for the blended food or beverage. Claim 7 depends from claim 1 and adds a detector for detecting whether the container is coupled to the base and using the determination to permit or forbid the operation of the blades. Paragraph 5 of CN ‘502 states that a magnetic induction switch is used to determine the presence of the cup body and paragraph 6 states that the control switch and the induction switch are used to determine if the motor can be activated.

In regard to claim 8, paragraph 5 states that a magnet in the container is used in conjunction with the induction switch in the base.

In regard to claim 16, CN ‘249 uses a battery 24 installed in the main unit 2 for power, with paragraph 14 stating that a rechargeable battery is preferred. Paragraph 27 of CN ‘502 states that a USB port on the base is used to charge battery pack 9 which powers the blender.

In regard to claim 17, while the examiner disagrees with requester's opinion that the battery 24 of CN '249 is welded in place, the end of paragraph 36 states that the battery is rechargeable so that it need not be frequently replaced.

In regard to claim 18, as stated above, CN '502 taches a USB port to charge the battery in paragraph 27.

As CN '249 in combination with CN '502 teaches the features of claims 7,8 and 16-18 of the '891 patent, CN '249 in view of CN '502 is seen to provide a SNQ for claims 7,8 and 16-18 of the '891 patent.

SNQ 4: Claim 14 of the '891 patent is unpatentable over CN '249 in view of Boyce, Faulkner-Edwards and Grepper.

As stated above, CN '249 is independently seen to support a SNQ for claims 1-6,9-13 and 15 of the '891 patent. Claim 14 depends from claim 1 and claims the motor operates at a voltage between 5 and 10 volts and the motor spins the blades between 20,000 and 35,000 rpm. Boyce teaches a battery power blender and in lines 36-44 of column 5 that the motor is a 6 volt DC motor. Faulkner-Edwards shows a blender with line 20 of column 5 teaching a rotation speed of 20,000 rpm, specifically useful for crushing ice. Grepper, specifically lines 7-17 of column 11, teaches speeds higher than those used for ice crushing for use to adequately blend certain mixtures. As the combination of references is seen to provide a teaching for each of the limitations of the claim, the combination is seen to provide a SNQ for claim 14.

SNQ 5: Claim 20 of the '891 patent is unpatentable over CN '249 in view of CN '502 and further in view of Grepper.

As stated above, CN '249 in view of CN '502 is seen to support a SNQ for claims 7,8 and 16-18 of the '891 patent (see the discussion of SNQ 3 above). Claim 20 depends from claim 16 and adds the limitation that the rechargeable battery has a capacity between 1000

mAh and 6000 mAh. Grepper discloses a portable blender with the two paragraphs beginning on line 15 of column 12 describing the battery 352 which is preferably rechargeable. Line 40 of column 12 specifies a total capacity of the battery of approximately 1500-4000 mAh. As the combination of references is seen to provide a teaching for each of the limitations of the claim, the combination is seen to provide a SNQ for claim 20.

SNQ 6: Claims 1-7,9-13 and 15-18 of the ‘891 patent are unpatentable over CN ‘572 in view of CN ‘249.

As stated above in regard to SNQs 1 and 2, CN ‘249 is independently seen to support a SNQ for claims 1-6,9-13 and 15 of the ‘891 patent. CN ‘572 does not change this finding. CN ‘572 discloses a blender with a cup body 2 attachable to a cup base 3. Paragraph 7 states that the blender motor is powered by a battery and driven by a control circuit, both located in the cup base. The motor powers blades 6 through a rotating shaft (paragraph 26). The cup uses threads 3111 to couple with the base which has external threads 21. The figures show the diameter of the blender, from the bottom of the base to the top of the cup remaining substantially constant. CN ‘572 does not show the offset of the rotational axis from the longitudinal axis, but as discussed above, CN ‘249 teaches this feature. As both references disclose similar battery powered portable blenders with substantially constant diameters and a threaded connection between the base and the cup and CN ‘249 has been shown above to support a SNQ for claims 1-6,9-13 and 15, the combination of CN ‘572 and CN ‘249 is seen to support a SNQ of these claims.

In regard to claim 7, paragraphs 31 and 32 of CN ‘572 describes safety control switch 10 which uses resilient button 101 to determine if the cup is in place on the base and deactivating the motor if the cup is not in place.

In regard to claim 16, paragraph 28 of CN ‘572 states the battery is rechargeable with a USB charging interface 313 (as claimed in claim 18) to charge the battery. This is seen to imply

that the battery is permanently integrated into the base and not user replaceable, as claimed in claim 17. As the combination of references is seen to provide a teaching for each of the limitations of the claim, the combination is seen to provide a SNQ for claims 1-7,9-13 and 15-18.

SNQ 7: Claim 8 of the '891 patent is unpatentable over CN '572 in view of CN '249 and further in view of CN '502;

SNQ 8: Claim 14 of the '891 patent is unpatentable over CN '572 in view of CN '249 and further in view of Boyce, Faulkner-Edwards and Grepper; and,

SNQ 9: Claim 20 of the '891 patent is unpatentable over CN '572 in view of CN '249 and further in view of Grepper.

As discussed above in regard to SNQ 6, CN '572 in view of CN '249 is seen to present a SNQ for claims 1,7,9-13 and 15-18. As discussed above in regard to SNQ 3,4 and 5, CN '502, Boyce, Faulkner-Edwards and Grepper disclose the subject matter of dependent claims 8,14 and 20. As the combinations of references are seen to provide a teaching for each of the limitations of the claims, the combinations are seen to provide a SNQ for claims 8,14 and 20.

### *Patent Owner Pre-Order Paper*

Patent owner did not file a Pre-Order paper.

### *35 U.S.C. §325(d)*

A review of the post grant history for the '891 patent indicates that there have been no other Office post grant challenges involving the patent (Reexamination Proceedings or Inter Partes Review, Post Grant Review, Covered Business Method trials). Accordingly, a determination of whether to exercise discretion to reject the request pursuant to 35 USC 325(d) is not applicable

***Conclusion***

As the request provided a SNQ for claims 1-18 and 20 these claims will be reexamined. As no SNQ has been provided for claim 19, this claim will not be part of this reexamination proceeding and will not be further commented upon.

**All** correspondence relating to this ex parte reexamination proceeding should be directed:

By Patent Center: Registered users may submit via the electronic filing system, Patent Center, at: https://patentcenter.uspto.gov/

By Mail to: Mail Stop *Ex Parte* Reexam
Central Reexamination Unit
Commissioner for Patents
United States Patent & Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

By FAX to: (571) 273-9900
Central Reexamination Unit

By hand: Customer Service Window
Knox Building
501 Dulaney Street
Alexandria, VA 22314

For Patent Center transmissions, 37 CFR 1.8(a)(1) (i)(C) and (ii) states that correspondence (except for a request for reexamination and a corrected or replacement request for reexamination) will be considered timely filed if: (a) it is transmitted via the Office's electronic filing system in accordance with 37 CFR 1.6(a)(4); and, (b) includes a certificate of transmission for each piece of correspondence stating the date of transmission, which is prior to the expiration of the set period of time in the Office action.

Any inquiry concerning the status of this proceeding should be directed to the Central Reexamination Unit at telephone number (571) 272-7705. Any inquiry concerning this communication should be directed to William C. Doerrler at telephone number (571) 272-4807.

/WILLIAM C DOERRLER/
Reexamination Specialist, Art Unit 3993

Conferees:

/Laura Davison/
Reexamination Specialist, Art Unit 3993

/EILEEN D LILLIS/
SPRS, Art Unit 3993